Our first case is Laitram v. Ashworth Bros., 2022, 1044. Ms. Dreyer. Good morning, your honors. May it please the court. Lauren Dreyer on behalf of patent owner Laitram in this appeal. This appeal concerns two claim construction issues and wholly conclusory and contradictory findings on motivation to combine that cut across all of the challenged claims. I'd like to begin with the claim construction issue for the tapering element. The board's construction of the term tapered in element 9E, in which the ridge is tapered along a portion of its length, violates the plain and ordinary meaning of the claim language and renders other language in the claim superfluous. The board's construction should be reversed and if so, its findings of obviousness should be reversed as well because the petitioner, Ashworth, in this appeal preserves no argument that the prior art discloses or renders obvious this element under a proper construction. The plain and ordinary meaning of the tapering element requires three things. It requires that the ridge is tapered. It requires that it is tapered in the lower segment of the drive member. And it requires that it is tapered along a portion of its length. Claim element 9E must be construed in the context of the whole claim and its surrounding claim language. And claim element 9D already recites that the ridge's distance to the vertical axis varies from bottom to top of the drive tower. The board's construction, which construes the claim element in 9E as being met solely by a change in the ridge's distance from the ridge to the vertical axis of the drive tower, ignores the surrounding context of the element 9D and 9E and renders the element resided in 9D entirely superfluous. Latrim's construction is fully consistent with the patent's use of the term taper in the intrinsic record. It refers to tapering an element by changing that element relative to itself. For example, the outer surface of the tapered drums in figures 17 and 18, they vary relative to other parts of the drum. And so the patent uses the term tapering consistently throughout. And Latrim seeks to apply that same meaning to the ridge consistent with the specification's discussions of a tapered ridge. Ashworth admits in its briefing, a red brief at page nine, that the ridge's height is one embodiment that's covered by the tapering element. Just to be clear, my recollection is that the word height here is used in two different ways. One is top to bottom, the other is turning the ridge on its side. So that, you're talking about when the ridge is in place is actually horizontal, not vertical, right? Right, when the ridge is affixed in the claim and in the prior art, it's affixed vertically to a vertical drive member. Right, I mean, not quite vertically on a cone? Right, right, upwards and downwards. But the ridge in terms of the construction that Latrim offers refers to the height of the ridge or otherwise the distance from the edge of the part that it's affixed to to its outer edge. So height or width might be a way to refer to it as well. But there are other uses of height that actually talk about top to bottom, right? In terms of the drive member and of the drive tower itself. Yes, your honor, but not in terms of the ridge necessarily. But Ashworth's construction here and the board's construction broadens the meaning of the term in such a way that renders claim language superfluous. And as we know, that's a highly disfavored construction under this court's precedent. Why does it render it superfluous? The board specifically construed the tapering element in 9E as being met solely by a change in the ridge's distance from its outer edge to the vertical axis of the drive tower. But that limitation is exactly what's recited in the previous claim. But it has to be at the bottom of the drive tower. In the lower segment. It's not just any change that satisfies 9E. It has to be a change in the bottom. So I understand your argument, but I think you can look at these patent claims a different way, can't you? Which is, all of them, one, two, and nine, have that general clause that says there's gotta be a change. And then they also have specific clauses that tells you where that change is located. And that doesn't read anything out. It's just there's a more general thing that says this stuff changes from the vertical axis. And then, you can read these as saying the next clause in all of one, two, and nine tell you where that change occurs. And that's, in fact, what I'm looking at. I don't know if it's the same in 388 or 595. I'm looking at the 388. And if you look at column one in the summary, it seems to suggest that that's exactly what it's doing. Because it talks about this change, the general change, and then it says here are three different ways to do it. I mean, isn't that what it says, basically, around 55 to 60 of column one? Let me look at that with you, your honor. 55 to 60 of column one. Yes, so 55, I think 55 to 60 of column one, though, is consistent with the way that LATRM is construing the term because, looking at the claim language, the claim language in 9D already recites that from the bottom to the top of the tower, the ridge varies, or the distance from the vertical axis varies. So it's already including in that a change in the lower segment. It doesn't say that the ridge varies at any point. Element 9D says that the ridge whose distance from the vertical axis varies from the bottom to the top of the drive tower. So it's already presupposing that there's a variation in that distance from the vertical axis in the lower segment. But that's what that phrase says. Am I misreading it, or isn't that phrase that you're saying, it's basically the same in one and two, isn't it? It all says, wherein each of the drive members includes an outwardly projecting ridge whose distance from the vertical axis varies from the bottom to the top. So it's not that that phrase tells you where the tapering is, it's just telling you it does vary somewhere, and then the following phrase in each of one and two and nine tells you where specifically on that claim the tapering occurs. I think that I agree with you, Your Honor, that it tells you where specifically that it occurs. But the problem with the board's construction is that it permits, what it points to as tapering occurs in the entirety. It doesn't just occur in the lower segment. What the board points to as tapering in order to find this met in the prior art is a ridge that is the same from bottom to top of the drive tower. It's only by being affixed to a conical surface that it finds that element met both in 9D and in 9E. So the claim, the board's construction deprives the element in claim 9E of really any meaning because the claim could have equally recited just a ridge, and you could read out the 9E element, and the board would have found the claim met by the prior art combination of affixing a ridge that doesn't change in any way to a conical surface, and the board finds that that. I don't understand that. Wouldn't it still have to have tapering at the bottom? Under Latrum's construction, it would still need tapering at the bottom, but that's not the way that the board construed it, and it's not the way that the board's construction applied its construction to the prior art. It found- You're saying the board's construction doesn't have tapering at the bottom? Just not the way you would accomplish it? It doesn't distinguish between the tapering in 9D and what Latrum would construe the tapering as in 9E. It finds the- Counselor changing topics. Do you want to tell us why PUP does not disclose a belt positively driven without slip? Yes, Your Honor. That seems to be an important part of your case. That's the second claim construction issue, and whether PUP discloses the term as properly construed. The petition argued here that the plain and ordinary meaning of without slip is no slip. That's on Appendix 317. The parties proceeded with that understanding until the final written decision changed the construction without any notice or opportunity for Latrum to be heard on the proper construction, and in that way, this case is on all fours with this court's Qualcomm decision, which found an APA violation by a change in a construction in a final written decision when it was an agreed upon construction by the parties. The proper construction here that's fully supported by the intrinsic record of without slip is the one that the parties agreed to all along. Without slip simply means no slip. Equating positive drive and without slip, which is what Ashworth argued during the proceeding, and which is what the board found, renders the terminology without slip superfluous. Both are used. The term uses both positive drive and without slip, unlike other claims, such as Claims 8 and 11, which only use the phrase positive drive. So that presumes that the term without slip has some separate and independent meaning. Ashworth doesn't have a response to this, and nor did it present any evidence. Can I just ask, in your patent owner response, did you make separate assertions about positive drive and without slip in proceeding with what I think you want to characterize as a two-part institution decision on construction? Yes, Your Honor, if your question is, did LATRM present an argument in its patent owner response that PUP did not disclose positive drive or without slip? Both. Did you say A, here's why it doesn't disclose positive drive and B, because we now have to address something additional, here's why it doesn't show without slip? Yes, Your Honor. LATRM did dispute the presence of positive drive and without slip in its patent owner response. At Appendix 868 through 870, LATRM rebutted both elements. Also at Appendix 1523 through 1525. Our patent owner response disclosed why PUP didn't disclose without slip. In particular, it said, if there is no friction, there is slip, and PUP is a no-friction slip system. At 870 of the appendix, we said, this is slip, it is certainly not positive drive. So we rebutted the presence of both in PUP in our patent owner response, and our expert, Mr. Strait, I'm sorry, as meaning different things? That is, did you say positive drive requires this, that they don't have that? Without slip, requires something more, and they don't have that. The parties- I kind of understood that you were throughout equating these things. I disagree, Your Honor. I think that we disputed the presence of positive drive  in the discussion of the prior art in PUP. And so we had a separate argument as to whether PUP disclosed positive drive as opposed to friction drive, based on the disclosures and the discussion of the prior art in PUP. We also separately responded to Ashworth's argument, which essentially equated positive drive and without slip, and said, no, there's actually slippage in PUP. And that's consistent with what our expert also testified to, which was submitted along with our patent owner response. So later on- I think you're well into your rebuttal. You can continue or save it as it is. I'll just briefly use some time to raise the fact that the findings on motivation to combine are consistent with this court's precedent, as explained in the TQ Delta case, that these findings are conclusory, they're contradictory, and they lack substantial evidence. And those findings cut across all of the independent challenge claims in this case. And if possible, I'd like to reserve my remaining time for rebuttal. We'll do that. Thank you. Mr. Alter, is it? It's Alter, yes. Alter, and you're not reserving any time for a cross-appeal. Not separately. I was going to address the cross-appeal in my time. That's all right. All right. May it please the court. Your Honor, I've turned first to the term tapered. The board properly found the specification supports two meanings for the term tapered. A change in the distance from the axis of rotation, or a change in the height of the ridge. Tapered is not limited to only figures 2A and 2B, as argued by Latrim. The board correctly construed tapered to have a broader meaning in view of all the extrinsic evidence. And I invite your attention to the board's decision in appendix pages 33 to 39. This took the language of claim 10, the language of claims one and two, the descriptions of figures 4A and 4B, the descriptions of figures 17 and 18, and the prosecution history and cited prior art running inside of Heber, all support the board's construction. Now, contrary to what Latrim argues, there is no specific definition of taper in specification. Therefore, there's no languages as used here in tapered means. As such, one of ordinary skill in the art would understand taper in view of all the intrinsic evidence just as the board did. Latrim incorrectly argues that the board's construction renders the claim term distance from the vertical axis superfluous. That's not true. The distance from the vertical axis, the element that they're talking about, refers to the distance at the top and bottom of the drive. Whereas the other one, where it talks about the tapering of the ridge in the lower segment, is dealing with the lower segment, and below which you can't have part of the ridge, which is a constant distance, as set for specifically in claim 10. So therefore, we're talking about two different areas or sections of the drive, which... I'm confused. I understand that there's a point about the varying from top to bottom, and there's also a point about the location of some kind of variation. And then you also have a point about there are two different kinds of variation that are at play in the word, or can be covered by the word taper. One is variation from the outer point of the ridge to the vertical axis of rotation. The other is variation of the outer point of the ridge to let's call it the inner edge of the ridge, the one that connects to the surface that it's all being connected to. How do these two points deal with each other? It seems to me they're... Because of the... Corsogonal distinctions. Yeah. Because in figures 2A and 2B, they show where you have the varying from the outer edge to the outer surface of the drum, all right? That's the change in height. No, let me... Maybe I can put the point this way. I will assume for purposes of this discussion that the word taper can include both meanings. Now, what did, in the prior art, the board find to meet the tapering limitation? All right, it's found specifically that when you put the taper on the figure one embodiment of Ruinstead, which is a conical frestle, you have a tapering, all right? I don't know what the expression is. Put the taper on figure one. The board said it was a combination of Pup's ridge, all right, or Ruinstead 2's ridge, plus Ruinstead's fresto conical shape, which had the tapering, which where the distance varied at the top and at the bottom, all right? So therefore, you had the tapering. Now, the key point here, though, is this... So did the board view some combination of prior art putting one thing on top of the other as producing a ridge that was rectangular in profile or not rectangular in profile? Was there an elbow in the outer edge of the ridge? It's not rectangular. If you lay it on, if you lay the ridge... the outer surface of a cone, then that's what I'm picturing. Is that what... That's what the board found. Yes, Your Honor. Okay. Yes. And as indicated, all right, you have one distance from the axis of rotation at the top, a different axis of distance from the axis of rotation... That will be always true in a conical tower. Always true in a conical tower. That's correct, Your Honor. And then as Kelley 10 points out, though, you could have part where below the bottom you had a constant portion. And therefore, that's when they're talking about this element which is the ridge below, the taper below, I'm sorry, the constant below the ridge. And you still have that. That's in a lower segment, all right? So you have one element that she's talking about goes to at the top and the bottom, and then the other element goes to the lower segment, which doesn't necessarily have to be at the bottom, right? Now, I would like to turn then to the other argument that counsel addressed, which dealt with the term construction without slip. Now, Latrum argues that the board materially changes preliminary construction by inserting the word essentially, and therefore read without slip out of the claims entirely. That's not correct. The board's construction makes it very clear. This morning, I think either mostly or maybe even entirely heard a point that maybe is not quite that point, namely the change from no slip to essentially no slip to instead an argument about how that creates redundancy between positive drive and slip. All right. Maybe I misheard that. All right, it's not redundancy. What the board determined was that there is no slip as there is in overdrive systems. Overdrive systems are designed to have the tower speed is faster than the belt speed so that by design, there is continuous built-in slippage of the belt. Positive drives have no slippage like that. In contrast, positive drives, there's structure on the tower that affirmatively engages the inside edge of the belt, pulls the belt along at the same speed as the tower, and it is engaged at multiple points regularly spaced around the tower. Thus, the belt speed and the tower speed are synchronized and the length of the belt is fixed between the inlet and the outlet so that you don't have slip as you do in a frictional driving system. It sounds like you're saying a positive drive system by definition has no slip. As shown in prior art, that's correct. Now, it is theoretically possible you could have a- Well, wait, let me then ask them what work is the additional no slip language doing in the patent claims? Or is it redundant? You could theoretically have a positive drive that was poorly designed if it's only fixed at one point or two points maybe, and then you could possibly have slip. Where as the prior art shows, you have multiple points all the way around the tower that are fixed to engage the belt, you're not gonna have slip, all right? So that is the point there. You didn't read it out. And as the board determined, without slip meant no overdrive, all right? It's not the type of overdrive that you have in a friction system. And they didn't change that. That's the big thing. The late term complains about the word essentially, but fails to identify any analysis of the board that hinged on inclusion of the word essentially, or that the- When did that term essentially come up in the proceeding? It came up in the final judgment, Your Honor. However, if you- Why isn't the other side and wasn't the other side entitled to an opportunity to say, oh, now that some wiggle room is allowed, then what? But the board did not change the application whatsoever to the prior art. The way the board applied the prior art was the same way as in the initial decision. In the initial decision, didn't have the word essentially, and still found that the combination of Pup and Roy instead disclosed this element. So are you saying that it may be that the word essentially was put into the language of the final written decision into the proceeding for the first time, but the application of the claim language, in fact, found in the prior art something that had no slip, and therefore the other side doesn't have anything concrete to complain about, the additional wiggle room? Absolutely, Your Honor. The application as to the prior art is identical, all right? In the way they applied it. There's nothing in the opinion whatsoever. If you look at our principal brief at page 21 to 22, we have side by side the initial claim construction and the final claim construction, all right? And the final one, the word essentially was inserted. It's never mentioned again. If you go all the way through, it never comes back to that point whatsoever. It still applies the claim construction of this limitation to the prior art the same way, finds it present for the same reasons they found it in the initial institution decision. Now- Can you address the cross appeal? I can, Your Honor. In the cross appeal, the board properly found claim nine obvious over Pupp and Roynstedt, but A.R. did not likewise find claim 10 obvious over Pupp and Roynstedt. Latrim had only argued in its patent owner's response that the dependent claim 10 was not obvious for the same reasons that independent claim nine was not obvious in ground one to five. As Latrim did not separately argue the patentability of dependent claim 10, it was error for the board not to also find claim 10 obvious over Pupp and Roynstedt. So that point about what Latrim didn't argue, are you asking us to say that when the board is not presented with an argument by the patent owner that distinguishes two claims, the board is obliged to treat them the same as opposed to free to treat them the same? The board is free to treat it, Your Honor. That's not enough for you. Well- Here the board said, okay, Latrim didn't make a case, but we think we have something of an obligation or in any event want to see if you all, as petitioners, made a case for claim 10 and we're scratching our heads about that. The position of the other side was that the claims fall together. The board did not accept that. However, be that as it may, the board also erred. Yeah, but the board said you didn't provide any argument as to why claim 10 was invalid. Yeah, if I may address that, Your Honor. The board erred in finally finding claim 10 obvious because it limited its considerations to Ronstadt's teaching, the single embodiment of the figure one rather than Ronstadt's teachings as a whole. The board erroneously found that Ashworth's petition relied only on figure one for claim nine and then switched horses in midstream from claim figure one to figure 11 for claim 10. Now, if you look at the petition and the supporting declaration, you'll see that the petition relied on Ronstadt's teaching as a whole and that the figure one, that's the conical driving drums, the figure five, the cylindrical driving drums, and the figure 11, mixed tapered and cylindrical driving drums, were all relied on because they were known interchangeable driving drum design options that disclosed the elements of claim nine, not just figure one. And I would invite you to look at the petition that is in the appendix at page 312 to 316 and in the supporting declaration in the appendix at 628 to 630. And in Cross Appellant's reply brief, we've laid this out clearly at pages five to eight. Now, Later's arguments are based on the faulted premise that the petition relied solely on figure one. And that's proved false by the petition and the expert declaration citations I just referred to. Can you just show me in the board's decision where you think it went wrong? Are we looking at page 80 and 81? I'm just trying to figure out whether you think this is legal error or if this is just substantial evidence. No, Your Honor, this is a legal error in that they did not consider the teachings of Ronstadt as a whole. They wanted to take merely Ronstadt figure one. That's all they relied on. I get that, that's your point, but I mean, this is why I asked you to look at the decision. It doesn't seem to me that that's what they're saying. They're saying you didn't make that argument. Although I can read it and it seems like maybe you did, but on 80, they're saying for claim nine, you only looked at figure one, and for claim 10, you only looked at figure 11. And that's why I cited these parts of the petition and to the expert declaration. So you don't think that's wrong? That is flat out wrong, absolutely. So they didn't address your proper legal argument. That is correct, Your Honor. And that's legal error. That's, yes, Your Honor. As this court found that Ronstadt uses terminology in referring to common driving drums in multiple embodiments, even though they have different shapes. It uses a similar numbering fashion for driving drums. For example, the driving drums in figure one are drums 12 and 13. And in figure five, which is described as a modification, this has the driving drums 112 and 113, and in column 12, lines 30 and 33, expressly states that the driving drums may be substituted for drums 112 and 113. This case is like the Theresen case, where this court has previously found similar references to common features provide an express teaching that would be obvious to look to multiple embodiments with common elements that when viewed together contain the limitations at issue. Counsel, as you can see, your red light is on. Your time has expired. Thank you. Thank you. Ms. Dreyer has some rebuttal time. Thank you, Your Honor. In response to the cross appeal, I'd just also like to point out that Appendix 26 also has some of the board's decision on the petitioner's reliance on the mixed shapes in figures one and figures 11 of Ronstadt. And there, the board says, importantly, the only statement affirmatively addressing the claim language at issue and the related testimony of Mr. O'Keefe clearly relies on Ronstadt's geometry in figure one. So what the board found in the cross appeal is that while the petition may have cited a mix and match these figures in terms of the argument that it presented, the only affirmative statement that it presented that addressed the claim language is with application to figure one. At most here, the petition tried to rely on a right-hand side of figure 11 to meet some elements and a left-hand side of figure 11 to meet other elements or a mixture of figures one and 11. Well, it can do that, can't it? I mean, that's what our law says, that you have to look at what the reference teaches as a whole, not how you specifically mash together two embodiments. Yes, Your Honor, that's true. But the issue here is not ignoring the teachings of a reference as a whole, but it's the failure to identify with particularity as the petitioner and the petitioner bears the burden to do so, the failure to identify in the petition with particularity how to make the combination under the TQ Delta case in order to do so. What do you mean how to make it? How to actually physically put together the two elements or whether the reference, a skilled artisan would read the reference as arriving at the claimed elements? I think I agree with you, Your Honor. No, no, no, those are two different options. One, I think, is contrary to our law and one is not. I think in the TQ Delta case, what the court says is that a petitioner needs to set forth. What about our recent Intel case? I know it came out after the briefing, but it specifically addresses this question and says it's wrong to require the petitioner to show how the elements necessarily work together. You look at the teaching as a whole of the reference and see whether it teaches the claimed elements. Right, I don't think the case law, Your Honor, requires that the petitioner identify how these two things work together, but they certainly need to provide evidence and argument in their petition that adequately demonstrates some reasons to make this combination, reasons to combine these two teachings together. So, a good artist would look at this reference and come up with this. Yes, and which elements to combine, in which way that there would be a predictable operation, how they would operate, those are all parts of the teaching on motivation to combine or looking at combining two very different drum tower shapes, because figure 11 is an up tower and a down tower, whereas figure one just shows these conical drum towers. So, there needs to be evidence presented in the petition with particularity, and that's what was absent here. And then, just to address the argument that was discussed previously as to whether the change in construction in the final written decision of without slip changed the application to the prior art. It, in fact, did, because Latrum presented evidence and argument throughout the proceeding that both Pupp and Rheinstadt, too, disclosed slippage. Those are references that- Are these the passages that, this is what I'm remembering, that those passages do talk about slippage, but not slippage of the entire, what, pad or whatever thing is going around, but rather of, say, I'm gonna say individual hooks. Oh, of the individual rod ends, but those are affixed to the drive members that- Right, but I'm gonna say you had 1,000 of them and three of them slipped. No way is the belt slipping. Oh, I don't believe that argument was sufficiently developed below, Your Honor, because- But the board said, right, that there will be, I think this is the reference you're talking about, that there won't be slippage of the belt found, won't be slippage of the belt just because there is slippage of a few of the connectors. Isn't that a finding for which there's substantial evidence? It's a finding for which Latrum was deprived of an opportunity to rebut, and I think what the board found here is that when slippage occurs, what it found on Appendix 219 is that the positive driving engagement is maintained, and that reinforces Latrum's argument that the board essentially equated positive drive and without slip in its construction when it broadened its construction to essentially without slip, and that broadening construction deprived Latrum of the opportunity to present evidence as to what the proper construction should be, since it was agreed upon, to develop an evidentiary record, to rebut the motivations to combine of a reference that discloses some elements of slip and some amounts of slip. There may have been different motivations to combine. Thank you, counsel, if you can say your argument. Yes, thank you so much. As you submitted, the panel will adjourn for a brief time.